UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAUSTEVEION JOHNSON | Case No. 2:18-cv-01078-JCM-GWF |
| Plaintiff, | ORDER |
| v. | |
| HIGH DESERT STATE PRISON, *et al.*, | |
| Defendants. | |

Presently before the court is *pro se* plaintiff Lausteveion Johnson's ("plaintiff") motion for partial summary judgment. (ECF No. 33). Defendants James Dzurenda, Julio Calderin, Jennifer Nash, Brian Williams, Jeremy Bean, Taylor Paryga, Anthony Ritz, Pamela Del Porto, Harold Wickham, Sheryl Foster, Renee Baker, and Benjamin Estill (collectively "defendants") filed a response (ECF No. 37) and a countermotion for partial summary judgment (ECF No. 38). Plaintiff did not file a reply to his motion or a response to defendants' countermotion, and the time to do so has passed.

**I.     Background**

The instant § 1983 claim arises from conditions and policies in High Desert State Prison ("HDSP"), where plaintiff was previously incarcerated, that allegedly infringe on plaintiff's First Amendment rights as a practicing Muslim. (ECF Nos. 4; 6).

The court screened plaintiff's complaint and allowed him to proceed on various claims, two of which are at issue in the instant motions. (ECF No. 4); (*see* ECF Nos. 33; 37). Plaintiff moves for partial summary judgment as to his § 1983 claim, which alleges a violation of his First

1

Amendment rights under the Free Exercise Clause, and his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim.  (ECF No. 33).

The Islamic faith requires practicing Muslims to engage in group prayer five times a day while one prisoner recites scripture.  Plaintiff's Free Exercise Clause and RLUIPA claims arise from his allegation that he has a right to use unit activity rooms for those group prayers.  (ECF No. 33 at 4–8).  However, "[p]ursuant to prison policy and practice, no prisoners are allowed to use the activity rooms for group religious services."  (ECF No. 38-1 at 4).  Defendant Nash, the associate warden at HDSP, avers in her declaration that the policy in this case is justified by legitimate penological interests as follows:

> The first justification is that allowing prisoners to use the activity room for group prayer would interfere with the prison's ability to provide other services in the activity room.  Throughout the day, HDSP staff schedule various prison services to be provided in unit activity rooms.  These services may include nursing sick call, mental health services, and educational services.  Classification staff may also use a unit activity room to meet with prisoners or perform their job duties.  However, allowing groups of prisoners to pray in the activity rooms would disrupt staff's ability to provide services to all prisoners on the unit.  In addition, experience has shown that once a particular religious group is granted access to use a prison space for religious purposes, requests from other groups soon follow, and such a scenario could soon prove unworkable if staff are to continue providing services in unit activity rooms.  Thus, the prison's goal of providing services to all prisoners in unit activity rooms is furthered by its prohibition on prisoners using the room for group prayer.
>
> The second justification is that staff are unable to monitor or supervise prisoners behind the locked door of the unit activity room.  Within the prison environment, staff are responsible to appropriately monitor prisoners to ensure the safety and security of prisoners, staff, and the public.  However, generally there is insufficient chapel staff to monitor group religious services in unit activity rooms.  Furthermore, if left unsupervised, there is a substantial risk that some prisoners would use group prayer in the activity room as a pretext for activities disruptive to prison operations.  Consequently, the prison's goal of ensuring safety and security is furthered by prohibiting prisoners from using activity rooms for group prayer.

*Id.* at 4–5.

Instead, "Muslim prisoners are able to attend group services at HDSP two days a week in the chapel."  *Id.* at 4.  Further, HDSP Operational Procedure ("OP") 810.01(1) allows Muslim prisoners to "'exercise accepted and approved religious activities within their assigned cells' without restriction so long as these activities do not rise to a disturbance within the unit."  *Id.*

. . .

2

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

3

*Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

#### a. Plaintiff's First Amendment claim under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

As an initial matter, the second element has been satisfied as defendants do not dispute that the alleged actions were committed under color of law. (ECF No. 38). Thus, the focus of the court's analysis turns to the first element—whether the right plaintiff alleges that defendants violated is a right secured by the Constitution or laws of the United States.

Plaintiff's § 1983 claim against defendants is premised on the allegation that refusing to allow him to use the activity rooms at HDSP for group prayer with other Muslim inmates unlawfully burdens his free exercise of religion.[1] (*See* ECF Nos. 4; 33). In defendants' countermotion, defendants assert that they are entitled to qualified immunity. (ECF No. 38).

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity. *See, e.g.*, *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1058 (D. Nev. 2013). Qualified immunity protects law enforcement officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity balances two important interest—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244. It allows for officials to make reasonable mistakes regarding the lawfulness of their conduct by excusing reasonable mistakes. *See id.* at 231.

---

[1] Plaintiff brings a variety of other claims under the Free Exercise Clause, none of which are relevant to this motion because plaintiff moves for partial summary judgment only as to defendants' refusal to let him use the activity room for group prayer. The court does not reach the merits of his other claims.

5

Deciding whether an officer is entitled to qualified immunity is a two-prong inquiry. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. *Id.* at 232. Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

The Supreme Court has instructed that district judges may use their discretion in deciding which qualified immunity prong to address first based on the circumstances of the case at issue. *See id.* at 236. Because the second prong of the qualified immunity test is dispositive, the court first determines whether the right plaintiff claims defendants violated was "clearly established."

The second "clearly established" prong of the qualified immunity analysis involves the issue of "fair warning"—specifically, whether prior decisions gave reasonable warning that the conduct at issue violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The Supreme Court also has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.*

Therefore, to raise a viable claim under the Free Exercise Clause, a prisoner must initially make a showing that the defendant has substantially burdened a sincerely held religious belief.[2]

---

[2] Defendants do not dispute that plaintiff's Muslim faith is a sincerely held belief. (ECF No. 38); *see also Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005) ("[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.").

*Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).  However, if such a belief is substantially burdened, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff believes that his right to engage in group prayer in HDSP's activity room was clearly established by *Lindh v. Warden*, No. 2:09-CV-00215-JMS, 2012 WL 379737 (S.D. Ind. Feb. 3, 2012).  Because *Lindh* is readily distinguishable from this case, the court disagrees.  To be sure, *Lindh* stands for the proposition that plaintiff, as a practicing Muslim, has a First Amendment right to engage in group prayer.  *See generally id.*  However, the *Lindh* court considered a warden's written memo that—with the limited exception of "regular Friday Jumu'ah prayer and other special holiday events as prescribed and approved by the [c]haplain" —banned group prayer entirely.  *Id.* at \*3.  The *Lindh* court found that there were genuine issues of material fact regarding whether the blanket ban on group prayer burdened the plaintiff's exercise of religion and whether the policy was the least restrictive means to achieve a compelling governmental interest (prison security).  *Id.* at \*10.

Here, plaintiff is precluded only from using the activity rooms for his group prayers.  And he acknowledges—as he must—that, even if it burdens a sincerely held religious belief, a prison "regulation is valid if it is reasonably related to legitimate penological interests."  (ECF No. 6 at 4 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Thus, the policy before the court in this case is inapposite to the policy at issue in *Lindh*.  Plaintiff has not shown that his right to use the activity rooms—or, for that matter, the right to use any particular place—for group prayer is clearly established.

Accordingly, defendants are entitled to qualified immunity as to this claim.  The court denies plaintiff's motion for partial summary judgment and grants defendants' countermotion on this point.

**b.  Plaintiff's RLUIPA claim**

The Ninth Circuit has unambiguously held that "RLUIPA does not authorize suits for damages against state officials in their individual capacities . . . ."  *Jones v. Williams*, 791 F.3d

7

1023, 1031 (9th Cir. 2015) (citing *Wood v. Yordy*, 753 F.3d 899, 903–04 (9th Cir. 2014)). Instead, RLUIPA authorizes injunctive relief. *Id.* However, that injunctive relief becomes moot "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice" because "he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Id.*

Here, plaintiff avers that his transfer to another facility was imminent when he filed his motion for partial summary judgment. (ECF No. 33 at 7–8). And defendants provide that plaintiff is currently housed at Southern Desert Correctional Center ("SDCC"). (ECF No. 38 at 4). Thus, plaintiff is no longer subject to HDSP policy and therefore lacks a legally cognizable interest in a judicial decision on the merits of his RLUIPA claim.

Accordingly, the court grants summary judgment in defendants' favor and dismisses plaintiff's RLUIPA claim as moot.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for partial summary judgment (ECF No. 33) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' countermotion for partial summary judgment (ECF No. 38) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's First Amendment claim regarding the use of HDSP's activity rooms for group prayer be, and the same hereby is, DISMISSED.

IT IS FURTHER ORDERED that plaintiff's RLUIPA claim be, and the same hereby is, DISMISSED as moot.

DATED July 13, 2020.



UNITED STATES DISTRICT JUDGE